UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Laura Farrell,

    Plaintiff,

v.                                                                      Civil Action No. 5:10-CV-284

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 5, 9)

    Plaintiff Laura Farrell brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Farrell's motion to reverse the Commissioner's decision (Doc. 5), and the Commissioner's motion to affirm (Doc. 9). For the reasons stated below, I recommend that Farrell's motion be GRANTED, in part; the Commissioner's motion be DENIED; and this matter be remanded to the Commissioner for further administrative proceedings.

## Background

    Farrell was forty-two years old on the alleged disability onset date of May 25, 2007. (AR 21, 33.) She completed high school and worked at a daycare facility supervising children for thirteen years. (*Id.* at 33, 138-39.) In 2007, Farrell stopped

working due to pain from her "shoulders down to [her] ankles" which prohibited her from bending over and lifting objects (*id.* at 34, 37), and stomach problems which interrupted her workday (*id.* at 35). Farrell stated that her pain varied from day-to-day and that she took medication, such as diazepam and ibuprofen for relief. (*Id.* at 41, 171, 181.)

In July 2007, Farrell filed applications for disability insurance benefits ("DIB") and supplemental security income. (AR 121, 124.) In support of her DIB application, Farrell alleged that she suffered from pain affecting various areas including her middle and lower back. (*Id.* at 151, 153, 155.) She stated that this pain was exacerbated by many activities, including bending over and walking. (*Id.* at 151, 182.) Farrell's application was denied initially and on reconsideration. (*Id.* at 54-61.)

On April 20, 2010, Administrative Law Judge ("ALJ") Robert Klingebiel conducted a hearing on Farrell's DIB application. (AR 29.) At the hearing, Farrell was represented by counsel and testified on her own behalf. (*Id.* at 29, 33.) On June 24, 2010, the ALJ issued a decision finding Farrell not disabled under the Social Security Act. (*Id.* at 15, 23.) The Decision Review Board subsequently affirmed the ALJ's decision, thus rendering it final. (*Id.* at 1.) Having exhausted her administrative remedies, Farrell commenced this lawsuit in the District of Vermont. (*See* Doc. 1.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not

so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step commands that the ALJ determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, the ALJ first determined that Farrell had not engaged in substantial gainful activity since May 25, 2007, her alleged onset date. (AR 17.) Next, the ALJ found that Farrell had the severe impairment of lumbago,[1] but that

---

[1] Lumbago is defined as lower back pain. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 849 n.2 (6th Cir. 2010).

3

Farrell's fibromyalgia and irritable bowel syndrome ("IBS") were not severe impairments. (*Id.*) At step three, the ALJ found that Farrell did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (*Id.* at 20.) The ALJ then determined that Farrell had the RFC to perform "the full range of light work," as defined in 20 C.F.R. § 404.1567(b) (*id.*),[2] but was unable to perform her past relevant work as a daycare director because that job "requir[ed] lifting and carrying of up to 50 pounds" (*id.* at 21). Finally, at step five, the ALJ determined that there were jobs existing in significant numbers in the national economy that Farrell could perform based on her age, education, work experience, and RFC. (*Id.* at 22.) The ALJ concluded that Farrell had not been under a disability since the alleged onset date of March 25, 2007. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his

---

[2] Pursuant to the regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). The regulations further provide:

> Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

*Id.*

"impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is restricted to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role in reviewing the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded [that] decision," *Hernandez v. Barnhart*, No. 05-9586, 2007 U.S. Dist. LEXIS 68478, at *18 (S.D.N.Y. Sept. 18, 2007) (internal quotation marks omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its

5

deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

### I.  Severe Impairments

Farrell claims that the ALJ erred as a matter of law when he determined at step two that Farrell's fibromyalgia and IBS were not severe impairments. (Doc. 5 at 7.) Farrell also claims that this decision was not supported by substantial evidence. (*Id.*)  I find that these claims have partial merit.

A claimant has a severe impairment if "any impairment or combination of impairments . . . significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b). In determining whether a claimant has a severe impairment, the ALJ must "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R § 404.1523. Thus, "[a] claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities." SSR 85-28, 1985 WL 56856, at *3 (1985).

### A.     Fibromyalgia

At step two of the sequential analysis, the ALJ determined that Farrell's fibromyalgia was not severe. Although the ALJ's basis for this determination is unclear, he noted that the reports of treating physician Dr. Beverly Roseberry, which include the diagnosis of fibromyalgia, "do not provide sufficient documentation of an impairment which is totally disabling." (AR 19.) As previously discussed, however, "minimal effect," not total disability, is what the law requires at step two. SSR 85-28, at *3; *see Williams v. Bowen*, 844 F.2d 748, 751(10th Cir. 1988). The ALJ thus applied the wrong standard at step two when considering Farrell's fibromyalgia.

Moreover, the record does not support a determination that Farrell's fibromyalgia had only a "minimal effect" on her ability to work. The record includes diagnoses of fibromyalgia from two treating physicians, Dr. Christine Jones and Dr. Roseberry. (*See* AR 278, 295, 305.) The ALJ acknowledged that both doctors found "tender points," a symptom associated with fibromyalgia, on Farrell's body. (*Id.* at 18-19.) Dr. Roseberry's notes reflect that Farrell's fibromyalgia had at least a minimal effect on her ability to perform basic work functions. (*See* AR 304.) The ALJ also cited Farrell's subjective account that her pain "feels like hot rods or pins jabbing her whole body," and that this causes lapses in her concentration. (*Id.* at 19.) Although this evidence does not necessitate an ultimate finding of disability, it does demonstrate that Farrell's fibromyalgia had at least a minimal effect on her ability to perform basic work activities. *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (providing that an ALJ "may do no more than screen out *de minimis* claims" at step two).

Furthermore, there is no evidence in the record that contradicts the fibromyalgia diagnosis from Farrell's treating physicians. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) ("With respect to the nature and severity of [a claimant's] impairment(s) . . . [t]he [Social Security Administration] recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." (Citations and internal quotation marks omitted)). Although Dr. Donald Bicknell provided his assessment of only "chronic low back pain," he did so almost two years before either Dr. Jones or Dr. Roseberry diagnosed fibromyalgia, making it impossible for him to take these opinions into consideration. (*See* AR 266, 278, 295, 305.)

The Commissioner asserts that, even if the ALJ erred in finding that Farrell's fibromyalgia was not severe, the error was harmless because the ALJ continued to the subsequent steps of the analysis. (Doc. 9 at 3-4.) But, as this Court and several others have previously held, the omission of a particular impairment at step two is harmless *only if* the ALJ later considers all of the claimant's limitations when making the RFC determination at step four. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (providing that the ALJ's failure to list claimant's ailment as a severe impairment at step two was harmless because the ALJ "extensively discussed" the limitations of the condition at step four); *see also McCartney v. Comm'r of Soc. Sec.*, No. 07-1572, 2009 WL 1323578, at *16 (W.D. Pa. May 8, 2009); *Swanson v. Astrue*, No. 10-217, 2011 WL 2582617, at *8 (D. Vt. June 29, 2011). Here, the ALJ seemingly used his finding at step two to categorically exclude any subsequent discussion of Farrell's fibromyalgia at later steps of his analysis. (*See* AR 20-21.) The ALJ's error at step two, therefore, is not

8

harmless because the RFC determination did not include consideration of Farrell's fibromyalgia. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Although I conclude that the ALJ committed harmful error at step two, and thus that the matter must be remanded, I will address Farrell's remaining arguments, in an effort to assist and expedite the remand process.

### B. Irritable Bowel Syndrome

In contrast to Farrell's fibromyalgia claim, the record provides very little support for Farrell's claim that her IBS was a "severe" impairment at step two. The ALJ determined that Farrell "had stomach pain, gastritis and related symptoms on occasion . . . but not so frequently as to affect her ability to perform one or more basic work activities." (AR 17 (citation omitted).) Farrell's testimony that she would use the bathroom four-to-five times on two or three days a week does not contradict the ALJ's determination, as these symptoms would not have even a "minimal effect" on her ability to perform basic work activities. (*Id.* at 35.) Although Farrell was diagnosed with gastritis in May 2005 (*id.* at 206), she continued to work well after that diagnosis (*see id.* at 138). Moreover, a 2008 CT scan of her abdomen was negative. (*Id.* at 311.) And when she complained of IBS in 2009, her doctor merely recommended more fiber. (*Id.* at 278.) Finally, Farrell took no medications to manage her IBS. (*Id.* at 171, 181.) Thus, I find that the ALJ's decision regarding Farrell's IBS is supported by substantial evidence.

## II. Credibility Determination

Next, Farrell contends that the ALJ erred in finding that her testimony was not credible. (Doc. 5 at 11.) She argues that, in making this finding, the ALJ impermissibly

9

employed substantively empty boilerplate language in lieu of the reasoned analysis that is required by law.  (*Id.*)  Although Farrell states that the ALJ's credibility determination violated the law, in substance, her argument is that such a determination is not supported by substantial evidence.  I disagree, and find that substantial evidence supports the ALJ's credibility determination.

It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant."  *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (internal quotation marks omitted).  If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.  *Id.* (citing *McLaughlin v. Sec'y of HEW*, 612 F.2d 701, 704 (2d Cir. 1982)).  "When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements."  SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).  An important indicator of the credibility of a claimant's statements is their consistency with other information in the record, including the claimant's medical treatment history.  *Id.* at *13-14.

Using this methodology, the ALJ first found that Farrell's "medically determinable impairment could reasonably be expected to cause the alleged symptoms."  (AR 21.)  Nevertheless, the ALJ determined that Farrell's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent [that] they [were] inconsistent with the . . . residual functional capacity

assessment" of a "full range of light work" (*id.* at 20, 21).[3] In making his RFC determination, the ALJ primarily relied on a combination of medical examinations and consultant reports.  (*See* AR 18-19.)  Specifically, the ALJ stated that treating physician Dr. Roseberry characterized an examination of Farrell as "normal," discussed exercise with her, and wrote that she was not in distress.  (*Id.* at 19, 291-92, 294, 304-05.) Additionally, the ALJ noted that, although Dr. Roseberry observed tender points over Farrell's lower cervical spine and knees, she found no neurological abnormalities.  (*Id.* at 19, 291.)  The ALJ also reviewed the report of treating physician Dr. Jones, whom Farrell saw in April 2009.  Dr. Jones's report indicated that he was optimistic that Farrell's condition would continue to improve, and he recommended that Farrell exercise regularly and seek counseling or biofeedback.  (*Id.* at 18, 278.)  Dr. Jones's prognosis was based on her examination of Farrell, which showed Farrell to have full hand grip, full shoulder abduction, and negative straight-leg testing.  (*Id.* at 18, 278.)  Additionally, Dr. Jones noted that Farrell's x-rays revealed only "minor scoliotic changes," "minimal facet arthritis," and "excellent disk space preservation."  (*Id.*)

In addition to this medical evidence, the ALJ considered the opinion of a non-examining agency physician, Dr. Bicknell, who concluded that Farrell was a healthy

---

[3] Farrell argues that the ALJ impermissibly failed to identify which specific aspects of her testimony were not credible. (Doc. 5 at 11.) The ALJ, however, identified several parts of Farrell's testimony that were seemingly implausible, including Farrell's claims that "it took her an hour to plant one small flower," and that "she cannot walk 100 yards to the mailbox without having to lie down afterwards." (AR 19.)

woman with chronic back pain.[4]  (AR 18, 270.)  Consistent with Farrell's medical examiners, Dr. Bicknell noted that Farrell did not appear to be in distress and had negative straight-leg raising and normal reflexes, despite also having some body tenderness and back discomfort.  (*Id.*)  The ALJ accurately characterized Farrell's treatment as conservative because it consisted mainly of over-the-counter medications and because Farrell failed to pursue other non-prescribed options, such as physical therapy or an orthopedist.[5]  (*Id.* at 19, 171, 181, 277, 291.)  Finally, the ALJ properly observed that Farrell's subjective testimony was not supported by objective medical findings.  (*Id.* at 19.)

---

[4] Farrell argues that the ALJ may not rely on a non-examining physician's opinion when it contradicts the opinion of a treating chiropractor. (Doc. 11 at 3.) This notion is misguided. Certainly, "[t]he general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability." *Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990) (internal quotation marks omitted); *see Green-Younger v. Barnhart*, 335 F.3d 99, 107-08 (2d Cir. 2003) (recognizing expert opinion evidence as not sufficiently substantial to undermine the position of the treating physician where the expert was a consulting physician who did not examine the claimant). Nevertheless, in many cases, a state agency consultant's opinion properly contributes to the substantial evidence in support of an ALJ's RFC determination. *See Santos-Sanchez v. Astrue*, 723 F. Supp. 2d 630, 638 (S.D.N.Y. 2010) (finding no error in ALJ's reliance upon state agency consultant's opinion). This undoubtedly holds true when, as in this case, a consultant's report is for the most part consistent with the other medical evidence. *See Babcock v. Barnhart*, 412 F. Supp. 2d 274, 280 (W.D.N.Y. 2006) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such their opinions may constitute substantial evidence if they are consistent with the record as a whole." (Internal quotation marks omitted)).

[5] A willful failure to partake in a prescribed course of treatment will not raise a question as to a claimant's credibility when, as in this case, the record demonstrates that the claimant has a negative reaction to stronger medication. *See Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985) (providing that a claimant's refusal to undertake treatment must be "without justifiable excuse"); *Cassiday v. Schweiker*, 663 F.2d 745, 749 (7th Cir. 1981). Nevertheless, a claimant's failure to seek alternative forms of medical attention, albeit non-prescribed, over a prolonged period of alleged severe pain bears at least some relevance to credibility. *See* 20 C.F.R. § 404.1529(c)(3) (the ALJ can consider evidence regarding "what medications, treatments or other methods you use to alleviate [your pain]"); SSR 96-7p, 1996 WL 374186, at *7 (providing that "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.")

Farrell contends that a non-examining physician's opinion cannot constitute substantial evidence when the consultant failed to examine the entire record. (Doc. 11 at 3.) Although Farrell seemingly confuses which non-examining physician's report the ALJ relied upon (*compare* Doc. 11 at 4, *with* AR 18, 265-66), I will consider her argument as applying to the proper consultant, Dr. Bicknell, who completed his report on September 25, 2007. (AR 265.) Farrell argues that, given the date of Dr. Bicknell's report, he could not have considered subsequent evidence, including the later medical opinions from Drs. Jones and Roseberry. (Doc. 11 at 4.) It is clear from the ALJ's decision, however, that he considered all of these opinions when making his credibility determination. (*See* AR 18-19). Furthermore, Farrell's symptoms were consistent in Drs. Bicknell, Jones, and Roseberry's reports. Thus, there is no evidence that Dr. Bicknell's report was "significantly compromised." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (holding that a non-examining physician's opinion was "significantly compromised" when it was based on an incomplete transcript).

Finally, citing to *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007), Farrell argues that the consideration of objective evidence was improper because fibromyalgia often does not have objective signs. But the facts here are not similar to those in *Rogers*, where the ALJ ignored all evidence of fibromyalgia. (*See* AR 18 (acknowledging Farrell's tender points).) It is clear that an ALJ's categorical dismissal of all evidence of fibromyalgia is impermissible under the law. *Rogers*, 486 F.3d at 243; *see Willoughby v. Comm'r of Soc. Sec.*, 332 F. Supp. 2d 542, 546-47 (W.D.N.Y. 2004). It is equally clear, however, that a subjective claim of fibromyalgia does not automatically

13

require a finding of disability. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have such a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority." (Citations omitted)). It was proper, therefore, for the ALJ to consider the objective medical evidence as one factor in his credibility determination. *See* 20 C.F.R. § 404.1529(a); SSR 96-7p, 1996 WL 374186, at *4-5 (providing that an ALJ must consider all of the evidence in the case record, including any statements by the claimant and other persons concerning the claimant's symptoms, if the objective medical evidence does not substantiate the claimant's reports of pain).

## III. Chiropractor's Opinion

Farrell claims that the ALJ erred in failing to weigh the opinion of her treating chiropractor, Dr. Jennifer Peet, pursuant to the applicable legal standard. Specifically, Farrell argues that, "[a]lthough the ALJ referenced Dr. Peet's assessment of Ms. Farrell's abilities, he did not bother to weigh the opinion under SSR 06-3p, solely because she was a chiropractor and not a trained orthopedist." (Doc. 5 at 6.) Under the regulations, claimants can use "evidence from acceptable medical sources to establish whether [they] have a medically determinable impairment." 20 C.F.R. § 404.1513(a). Although it is clear that this section does not pertain to chiropractors, as they are not an acceptable medical source, *see* 20 C.F.R. § 404.1513(d)(1); *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995), the regulations also provide that other sources may establish "the severity of [an] impairment and how it affects [a claimant's] ability to work," 20 C.F.R. § 404.1513(d).

Although Farrell submitted evidence from Dr. Peet in support of her DIB application (*see* AR 243-54; 283-87), she has failed to identify for the Court what specific part of Dr. Peet's report she believes the ALJ impermissibly ignored (*see* Doc. 5 at 5-7). Indeed, some of Dr. Peet's opinion arguably supports the ALJ's finding that Farrell can perform light work. For example, Dr. Peet stated that Farrell can perform activities such as shopping, traveling without a companion, and using standard public transportation. (AR 287.) Conflictingly, however, Dr. Peet opined that Farrell would have to lie down every ten minutes for fifteen minutes at a time during an eight-hour workday. (*Id.* at 285.) Dr. Peet also opined that Farrell would need twenty-minute periods of walking every half hour. (*Id.*) Dr. Peet additionally opined that Farrell's symptoms would interfere with her ability to concentrate for a total of six hours during an eight-hour workday because she would need to shift positions as necessary, and that Farrell could sit, stand, and walk for a total of ten minutes during an eight-hour workday. (*Id.* at 284.) Finally, Dr. Peet estimated that Farrell could lift a maximum of ten pounds for a total of five minutes and a maximum of five pounds for a total of fifteen minutes throughout an eight-hour workday. (*Id.*)

The record indicates that on May 25, 2007, Dr. Peet opined that Farrell was "not able to do work." (AR 253.) The ALJ, however, "discount[ed] the assessment of Dr. Peet . . . as from an unacceptable medical source." (*Id.* at 21.) While clear that an ALJ cannot categorically ignore evidence from an "other" source, *see Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (holding that it was error for the ALJ to not consider the opinion of a clinical nurse specialist), it is well settled that an ALJ need not necessarily

15

accept such evidence, *see Bunnell v. Sullivan*, 912 F.2d 1149, 1152 (9th Cir. 1990) (providing that "a claimant is free to offer chiropractic evidence to help the Secretary under his inability to work . . . [but] there is no requirement that the Secretary accept or specifically refute such evidence" (citation omitted)).  Rather, the ALJ is required to weigh a chiropractor's opinion by considering (1) "[h]ow long the source has known and how frequently the source has seen the individual;" (2) "[h]ow consistent the opinion is with other evidence;" (3) "[t]he degree to which the source presents relevant evidence to support an opinion;" (4) "[h]ow well the source explains the opinion;" (5) "[w]hether the source has a specialty or area of expertise related to the individual's impairment(s)," and (6) "[a]ny other factors that tend to support or refute the opinion."  SSR 06-03p, 2006 WL 2329939, at *4-5 (2006).

In assessing the weight of Dr. Peet's opinion, the ALJ first acknowledged that Farrell began undergoing chiropractic treatment in 2004.  (AR 18.)  The ALJ then observed that Dr. Peet provided little support for her evaluation, beyond Farrell's subjective complaints.  (*Id.*)  In addition to these factors, the ALJ compared Dr. Peet's opinion as to Farrell's functionality with the medical sources on record.  (*See id.* 18-19.)  After performing this analysis, the ALJ decided to afford Dr. Peet's opinion discounted weight because it was contrary to the other medical evidence.[6]  (*Id.* at 21.)

---

[6] Farrell claims that the ALJ "did not bother to weigh" Dr. Peet's opinion (Doc. 5 at 6), but, for the aforementioned reasons, I disagree.  If the ALJ had in fact categorically ignored the chiropractor's opinion, he would have erred as a matter of law.  *See Frantz*, 509 F.3d at 1302; *see also Perillo v. Astrue*, 516 F. Supp. 2d 206, 208 (D. Conn. 2007) (holding that the ALJ incorrectly "offered no analysis of the [applicable] factors . . . in deciding how much weight to give a medical opinion"); *Solsbee v. Astrue*, 737 F. Supp. 2d 102, 114-15 (W.D.N.Y. 2010) (holding that the ALJ erred when he summarily devalued a chiropractor's opinion without first considering the applicable factors).

Doctors must rely on subjective complaints.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (providing that a doctor's reliance on subjective complaints does not undermine an opinion because "a patient's report of complaints, or history, is an essential diagnostic tool" (internal quotation marks omitted)).  This especially holds true in the case of fibromyalgia, which often has "no objectively alarming signs." *Rogers*, 486 F.3d at 243; *see Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (providing that it is improper for an ALJ to "focus[] on the absence of objective findings to corroborate . . . claims of [fibromyalgia]" because "the impairment's hallmark is . . . a lack of objective evidence").  Nevertheless, when a chiropractor's opinion as to functionality is based solely on subjective claims, an ALJ must be permitted to include this factor in his analysis.  *See* SSR 06-03p, 2006 WL 2329939, at *4 (providing that an ALJ may consider "[t]he degree to which the source presents relevant evidence to support an opinion"); *see also Green-Younger*, 335 F.3d at 107 (holding that "[t]he fact that [a doctor] *also* relied on [a claimant's] subjective complaints hardly undermines his opinion as to her functional limitations" (emphasis added)).  The ALJ, therefore, did not err as a matter of law because he performed the analysis required by SSR 06-03p.  *See* SSR 06-03p, 2006 WL 2329939, at *5 ("Not every factor for weighing opinion evidence will apply in every case. . . . Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.").  Furthermore, the ALJ's determination regarding Dr. Peet's opinion is supported by substantial evidence, as discussed above.

## IV.     Equivalence to a Listed Impairment

Finally, Farrell claims that the ALJ erred when he found that Farrell's impairment did not meet or medically equal an impairment identified in the Listings. (Doc. 5 at 12.) Specifically, Farrell contends that her inability to walk short distances is the equivalent of a musculoskeletal impairment, as described by 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2. (*Id.* at 13.) This claim lacks merit.

As previously discussed, the ALJ "considers *medical* evidence" at the third step of the sequential analysis "to determine if the impairment meets or equals the criteria of an impairment" from the Listings. *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (emphasis added). For a claimant to successfully carry her burden of proof at this step, she "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

In support of her claim, Farrell relies on her chiropractor's opinion that she cannot "walk a block at a reasonable pace on rough or uneven surfaces." (AR 287; *see* Doc. 5 at 13.) Farrell also cites both her and her husband's testimony that she struggles to walk. (*See* Doc. 5 at 13; AR 41, 47.) The Listings provide that a musculoskeletal impairment is considered "severe" if the claimant demonstrates the "inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment or the inability to perform fine and gross movements effectively on a sustained basis." *Solsbee v. Astrue*, 737 F. Supp. 2d 102, 109-10 (W.D.N.Y. 2010) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1) (internal quotation marks omitted). Although, "[o]ne example of ineffective ambulation is the inability to walk a

18

city block at a reasonable pace," *id.* at 110, Farrell did not satisfy her burden of proof because none of the scant record evidence supporting this impairment is from an acceptable medical source. *See* SSR 86-8, 1986 WL 68636, at *4 (1986), *superseded on other grounds*, SSR 91-7c, 1991 WL 231791 (Aug. 1, 1991) (providing that "[a]ny decision as to whether an individual's impairment or impairments are medically the equivalent of a listed impairment *must be based on medical evidence* demonstrated by medically acceptable clinical and laboratory diagnostic techniques, including consideration of a medical judgment about medical equivalence furnished by one or more physicians designated by the Secretary" (emphasis added)).

Furthermore, as the Commissioner correctly notes, section 1.00B2a is not a listed impairment in itself; rather it is the introductory provision. *Buonora v. Comm'r of Soc. Sec.*, No. 05-1133, 2008 WL 2185349, at *6 n.4 (N.D.N.Y. May 23, 2008). The specific conditions are described in Listings 1.02 through 1.06. *Id.* To meet her burden at step three, Farrell would have had to produce medical findings that her impairments were equal in severity to the criteria under a specific Listed impairment, and she has failed to do so. Accordingly, I find that the ALJ did not err in concluding that Farrell's impairments were not medically equivalent to a listed musculoskeletal impairment.

## Conclusion

For these reasons, I recommend that Farrell's motion (Doc. 5) be GRANTED, in part; the Commissioner's motion (Doc. 9) be DENIED; and the matter be REMANDED for further proceedings and a new decision, in accordance with this recommendation.

Dated at Burlington, in the District of Vermont, this 23rd day of November, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation. *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).